## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LISA Y. MCEACHRON,

               Plaintiff,

                                       Case No. 8:15-cv-1263-T-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.
_____/

## <u>OPINION AND ORDER</u>[1]

## I.  Status

     Lisa Y. McEachron ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is the result of "[b]ipolar 1 disorder," "mixed episodes," "tardive dyskinesia," "tardive dyskinesia movements," "OCD" (obsessive-compulsive disorder), "[a]nxiety," and "[p]sychotic features."  <u>See</u> Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed August 18, 2015, at 214 (emphasis omitted).  Plaintiff filed an application for DIB on November 27, 2013, Tr. at 189-90, and an application for SSI on December 19, 2013, Tr. at 194-99, alleging in both an onset date of August 1, 2003, Tr. at 189, 194.  Plaintiff later amended her onset date for both applications to December 5, 2010.  Tr. at 191, 193.  Plaintiff's applications were denied initially, Tr. at 125-26 (DIB); Tr. at 130-31 (SSI), and were denied upon reconsideration, Tr. at 138-39 (DIB); Tr. at 144-45 (SSI).

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed August 18, 2015; Reference Order (Doc. No. 13), entered August 19, 2015.

At a hearing on September 18, 2014, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel.  Tr. at 40-68.  On October 17, 2014, the ALJ issued a Decision finding Plaintiff not disabled "from December 5, 2010, through the date of th[e D]ecision," and denying Plaintiff's claim.  Tr. at 34; see Tr. at 25-34.  Plaintiff then requested review by the Appeals Council, Tr. at 17, and submitted to the Council additional evidence in the form of a brief authored by her attorney, appended to which were photocopied pages from the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Tr. at 4, 5; see Tr. at 294-304 (brief and attached DSM-IV pages).  On March 19, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner.  Tr. at 1-3.  On May 22, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: (1) whether "the ALJ erred in the assessment of the medical opinions of treating psychiatrist, [Marilyn Ward, M.D.]"; and (2) whether "the ALJ erred in failing to address the issue of whether [Plaintiff] could perform work activities on a full time basis, five days a week[,] eight hours a day or the equivalent."  Plaintiff's Memorandum of Law (Doc. No. 18; "Pl.'s Mem."), filed November 19, 2015, at 12, 18 (emphasis and some capitalization omitted); see id. at 12-20.  Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") on January 19, 2016.  After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons discussed below.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry.  See Tr. at 27-34.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 5, 2010, the alleged onset date."  Tr. at 27 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: bipolar disorder with manic and psychotic features; depression; tardive dyskinesia from needed medication treatment; and ethanol abuse."  Tr. at 28 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 28 (emphasis and citation omitted).

---

[2]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform a full range of work at all exertional levels, but with the following non-exertional limitations: work must be limited to performing and carrying out unskilled routine and repetitive procedures and tasks, with the ability to make no more than basic decisions and adjust to only simple changes in the work setting.   Additionally, [Plaintiff] can tolerate only occasional interaction with the public.

Tr. at 30 (emphasis omitted).  At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a waitress.  Tr. at 32 (emphasis and citation omitted).  At step five, the ALJ considered Plaintiff's age (thirty-seven (37) years old on the alleged onset date), education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 33 (emphasis and citation omitted).  Relying on the testimony of the VE, the ALJ identified as representative jobs a cleaner, kitchen helper, hotel chambermaid, and an office helper.  Tr. at 34 (some capitalization omitted).  The ALJ concluded that Plaintiff "has not been not under a disability . . . from December 5, 2010, through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'"  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard

is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The two issues Plaintiff raises are addressed in turn below.

## A.  Whether the ALJ Erred in Assessing Treating Psychiatrist Dr. Ward's Opinion

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." <u>McNamee v. Soc. Sec. Admin.</u>, 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the

---

[3]        "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); <u>see also</u> 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

"[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence;

---

[4]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

(2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

Here, Plaintiff argues the ALJ erred in giving little weight to the medical opinion of her treating psychiatrist, Dr. Ward.  See Pl.'s Mem. at 12-18.  Based on the record, it appears Dr. Ward treated Plaintiff frequently (about once a month) between September 2012 and March 2014.[5]  See Tr. at 445-46, 504-31, 596-97, 641-48.  She completed a Medical Source Statement on September 3, 2014, see Tr. at 649-51, and a brief Questionnaire on August 29, 2014, see Tr. at 652.  Both primarily offer opinions in a checklist format, with little written explanation.  See Tr. at 649-52.

Overall, Dr. Ward opined Plaintiff is not "able to safely sustain a simple sedentary job on [a] five-day, eight-hour a day basis."  Tr. at 652.  As to specific impairments, Dr. Ward indicated Plaintiff has a "[s]light" impairment in her ability to "[u]nderstand and remember short, simple instructions" and to "[c]arry out short, simple instructions," and she opined Plaintiff has "[m]arked" impairment in her ability to understand, remember, and carry out "detailed instructions" and in her "ability to make judgments on simple work-related decisions."  Tr. at 649.  In support of these determinations, Dr. Ward wrote that Plaintiff "has

---

[5]      Plaintiff states in her Memorandum that her treatment with Dr. Ward began "at least as early as April 11, 2011," Pl.'s Mem. at 12 (citing Tr. at 552-53), but the record cited by Plaintiff appears to be signed by a different doctor, as the handwriting and signature differ from Dr. Ward's handwriting and signature on documents that clearly identify her as the signatory, see Tr. at 552-53 (April 11, 2011 record cited by Plaintiff); Tr. at 649-52 (documents clearly signed by Dr. Ward).

repeatedly been sent home from work for inability to carry out simple workplace tasks involving following instructions [and] making simple judgments with customers." Tr. at 649.

Dr. Ward further indicated Plaintiff has "[e]xtreme" impairment in her ability to "[i]nteract appropriately with the public" and to "[r]espond appropriately to work pressures in a usual work setting," and she opined Plaintiff has "[m]arked" impairment in her ability to "[i]nteract appropriately with supervisor(s)" and "co-workers" and in her ability to "[r]espond appropriately to changes in a routine work setting." Tr. at 650. Dr. Ward supported these opinions as follows:

> [Plaintiff] has abnormal facial movements (tardive dyskinesia) related to medication treatment of her disorder. They cause the customer base, co-workers, [and] supervisors to react negatively, and their negative reactions lead [Plaintiff] to lose concentration[] (which is poor to begin with), lose train of thought, [and] at extreme[,] lapse into psychotic thinking (loss of contact with reality). [Plaintiff] has difficulty dealing with stimulus inputs of facial movements, job demands [and] psychotic thoughts.

Tr. at 650.

The ALJ summarized these opinions of Dr. Ward in the Decision and then stated he gave them "some, albeit little, weight." Tr. at 32. The ALJ explained he found "Dr. Ward's opinion of extreme limitations is not consistent with her own treatment record, which consists of voluminous unremarkable findings, nor is it consistent with the medical record as a whole, as detailed [earlier in the Decision]." Tr. at 32. According to the ALJ, "the record in this case reveals no such restrictions or limitations recommended by Dr. Ward or any treating source." Tr. at 32. But the ALJ "conceded [Plaintiff's] need for work that is limited to performing[,] understanding[,] and carrying out unskilled routine and repetitive procedures and tasks, with the ability to make no more than basic decisions and adjust to only simple change[s] in the work setting." Tr. at 32.

Plaintiff contends that "the ALJ's conclusion" regarding Dr. Ward's opinions "is not supported by substantial evidence" because Dr. Ward's opinions are "extensive[ly] support[ed]" by the treatment notes of Dr. Ward and others from the Mental Health Resource Center, as well as by other evidence of record. Pl.'s Mem. at 15. Plaintiff addresses various evidence from the record to support this. See id. at 13-17. For instance, Plaintiff points to records showing that her hallucinations led to problems complying with medication treatment, including records from April 30, 2005, December 14, 2010, and June 29, 2011 indicating Plaintiff believed that God was telling her to stop taking her medications. Id. at 13, 15 (citing Tr. at 362, 371, 375, 548, 549).    Due  to episodes related to her hallucinations and medication noncompliance, Plaintiff notes, she was admitted (or involuntarily committed) for treatment in December 2010, February 2010, and January 2014. See id. at 15-17.

Plaintiff also addresses records relating specifically to her ability to work, including treatment records suggesting that her ability to work was being disrupted by her symptoms, such as involuntary facial movements and diarrhea. Id. at 14 (citing Tr. at 505, 510, 576-77, 588). Plaintiff states that on April 11, 2011, Dr. Ward "noted with approval that [Plaintiff] recognize[d] she is not able to work full time." Id. at 13 (citing Tr. at 552). Plaintiff discusses a letter, included in the record, see id. at 17 (citing Tr. at 293), in which Plaintiff's employers (co-owners of an Italian restaurant) wrote that they "have been witness to many of [Plaintiff's] problems from her facial twitch that will come on very suddenly and has been known to last for up to a week or more," as well as "her sudden mood swings and emotional breakdowns that will occur at any time without provocation." Tr. at 293. They explained that they "have kept [Plaintiff] on as an employee for so long" despite her problems because they "are a family business" and "feel that [Plaintiff] is a part of [their] family." Tr. at 293.

In opposition, Defendant argues, "The ALJ properly assigned little weight to Dr. Ward's opinion, and his decision is supported by substantial evidence, including Plaintiff's treatment history, her ongoing ability to perform part-time work, and the opinion of the state agency psychologist." Def.'s Mem. at 4 (citing Tr. at 32). Defendant extensively cites treatment notes in the record to show the "mild-to-moderate findings," including that Plaintiff's "appearance, mood and thought process were all usually deemed appropriate, and her speech was normal," and that her "Global Assessment of Functioning (GAF) scores were mostly in the 50s or low 60s, indicating only moderate symptoms." Id. at 7 (citations omitted). Defendant further observes, also with extensive citations, that "[t]he vast majority of Plaintiff's treatment records indicate she did not experience hallucinations in her daily life." Id. at 6-7 (citations omitted). As to hospitalizations, Defendant asserts "Plaintiff in fact recovered quickly after her inpatient treatments." Id. at 6.

Upon review, the undersigned finds the ALJ's assessment of Dr. Ward's opinions is supported by adequate reasons, particularly the ALJ's statement that Dr. Ward's opinion of extreme limitations is inconsistent with Dr. Ward's own treatment records and the medical record as a whole. See Tr. at 32. Furthermore, the ALJ's reasons are supported by substantial evidence, including the "voluminous unremarkable findings" in the treatment records, as noted by the ALJ. Tr. at 32; see, e.g., Tr. at 387, 391, 393, 399, 401, 405, 407, 409, 504, 506, 508, 510, 512. Extreme episodes and hospitalizations have been infrequent, mostly limited to late 2010 and early 2011, and Plaintiff otherwise appears to function normally, resuming her part-time waitressing while sometimes interviewing for other jobs. See Tr. at 407, 415. Accordingly, the ALJ's Decision is due to be affirmed on this issue.

**B. Whether the ALJ Erred in Failing to Discuss Plaintiff's Ability to Work Full-Time**

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). According to Social Security Ruling ("SSR" or "Ruling") 96-8p, "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a <u>regular and continuing basis</u>," which the Ruling defines as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p 1996 WL 374184, at *1 (emphasis added). For a claimant to be found not disabled at step five in the sequential inquiry, the claimant must be capable of full-time work. <u>See</u> <u>McGrane v. Astrue</u>, No. 3:06CV1136J25MCR, 2008 WL 686928, at *5 (M.D. Fla. Mar. 12, 2008) (unpublished) (citing <u>Kelley v. Apfel</u>, 185 F.3d 1211, 1214 (11th Cir. 1999)).

Here, the ALJ noted in the Decision that Plaintiff continues to work part-time as a waitress, <u>see</u> Tr. at 32, and he considered this work in assessing Plaintiff's limitations and determining her RFC, stating that Plaintiff's "ability to maintain work activity . . . which requires a greater functional capacity and greater social interaction than assessed in the [RFC], indicates a level of functioning far greater than that originally alleged by [Plaintiff]," Tr. at 31. The ALJ also remarked, similarly, that Plaintiff's "ability and willingness to continue to engage in work activity, although it be less than the level of substantial gainful activity, is inconsistent with her allegations of total disability." Tr. at 31. Ultimately, relying on the VE's testimony based on the RFC finding, as noted, the ALJ found Plaintiff not capable of

performing her past relevant work as a waitress, but he found her capable of performing other work in the national economy, specifically as a cleaner, kitchen helper, hotel chambermaid, and an office helper.  Tr. at 32-34.

Plaintiff argues the ALJ erred by failing to discuss whether Plaintiff could work full-time and by finding Plaintiff not disabled based on her ability to work part-time.  See Pl.'s Mem. at 18-20.  Plaintiff asserts she "has worked part time, sometimes two days a week, sometimes three days a week, sometimes more days, but never five days a week, eight hours a day."  Id. at 18.  Plaintiff notes that her treating psychiatrist, Dr. Ward, "specifically opined that she could not" work full-time.  Id. at 19 (citing Tr. at 652).

Upon review, the undersigned finds no error here.  The ALJ did not assume that an ability to perform part-time work precludes a finding of disability.  Instead, the ALJ appropriately considered Plaintiff's part-time waitressing work in assessing Plaintiff's RFC and in finding her capable of performing other work in the national economy.  See Miller v. Comm'r of Soc. Sec., 524 F. App'x 191, 194 (6th Cir. 2013) (stating that "the ALJ did not err by considering [the claimant's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled") (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004). These findings are supported by specific reasons and substantial evidence.  Therefore, as Defendant correctly observes, "the ALJ was not required to further discuss Plaintiff's ability to perform each of the exertional demands of full time work, including the ability to work eight hours a day, five days a week," Def.'s Mem. at 10 (citing Castel v. Astrue, 355 F. App'x 260, 263 (11th Cir. 2009); Freeman v. Barnhart, 220 F. App'x 957, 959-60 (11th Cir. 2007)) (other citations omitted).  Furthermore, the ALJ clearly distinguished between part-time and full-time

work, notably finding Plaintiff incapable of performing her past relevant work as a waitress, even while acknowledging that she continued to work part-time in this job.  <u>See</u> Tr. at 32-33.

## V.  Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 13, 2016.


*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

clr
Copies to:
Counsel of record